IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:26-CV-00016-FL

**Kathy Reaves**,

Plaintiff,

v.

**Freddie Williamson, et al.,**

Defendants.

**Order &
Memorandum & Recommendation**

Plaintiff Kathy Reaves, proceeding pro se, filed an employment action against the Public

Schools of Robeson County and several of the school district's officials and employees, as well as

the School Board, its former counsel, and his law firm. Compl., D.E. 1. Brought under various

laws, including 42 U.S.C. § 1983, it alleges retaliation, improper seizure and dissemination of

private information, due process violations, unlawful policies, and claims under the Fair Credit

Reporting Act (FCRA) and North Carolina state law. *Id.* She also asks to proceed without paying

the filing fee associated with bringing a civil lawsuit. *See* IFP Mots., D.E. 10, 14. And Reaves

moved for other relief. *See* Mots., D.E. 4, 11, 12.

The court will not require Reaves to pay the filing fee. And it will deny her other motions.

And because her proposed complaint fails to state a claim on which relief can be granted, the

undersigned recommends that the court dismiss her complaint without prejudice.

**I.     Background**

Reaves has filed several actions in this court.[1] The Complaint and filings in other cases set

out the following background.

---

[1] Reaves has filed actions against the same Defendants, or many of them, based on identical facts and raising the same
claims in the following cases: *Reaves* v. *Williamson,* No. 7:22-CV-00002-FL (E.D.N.C. Jan. 3, 2022); *Reaves* v. *Pub.*

Reaves worked as a Career and Technology Education (CTE) teacher at Townsend Middle School, in Robeson County, North Carolina. Compl. ¶¶ 4, 5, 19; *see also* Mem. & Recommendation at 3, *Reaves* v. *Pub. Schs. of Robeson Cnty*, No. 7:22-CV-00039-FL (E.D.N.C. Nov. 22, 2022), D.E. 149. In December 2021, she filed a grievance alleging the assistant principal, Debbie McKenzie, threatened her. Compl. ¶¶ 15, 19. The next day, the assistant superintendent of human resources, Freddie Williamson, arranged for Reaves to meet him the following morning. *Id.* ¶ 16. She was unsuccessful in her request to hold the meeting virtually. *Id.* ¶¶ 17, 18. Upon discovering that Williamson had backdated his signature on her employment contract, she filed a grievance against him. *Id.* ¶¶ 20, 28.

Williamson accused her of violating an electronics communications policy and instructed the IT department to disable Reaves's employee email account. *Id.* ¶¶ 39, 40. Reaves was thus unable to login, access her curriculum, or perform her teaching duties. *Id.* ¶¶ 31, 35, 37.[2]

Reaves maintains that during her employment, school board attorney Daniel Smith and his law firm, Brooks Pierce improperly accessed her personnel records. *Id.* ¶¶ 13, 14, 42, 43. And she claims Robeson County Public Schools provided information about her to another school district in December 2025. *Id.* ¶ 46.

In January 2026, Reaves filed the instant action alleging retaliation, Fourth Amendment violations, procedural due process violations, unlawful policies, and intentional infliction of emotional distress. Compl. at 9–16. She also brings a claim under the Fair Credit Reporting Act.

---

*Schs. of Robeson Cnty*, No. 7:22-CV-00039-FL (E.D.N.C. Mar. 11, 2022); *Reaves* v. *Faulkner,* No. 7:22-CV-00040-FL (E.D.N.C. Mar. 11, 2022); *Reaves* v. *Brooks Pierce,* No. 7:22-CV-00053-FL (E.D.N.C. Mar. 30, 2022); *Reaves* v. *Maxton Police Dep't,* No. 7:22-CV-00204-FL (E.D.N.C. Apr. 12, 2022); and *Reaves* v. *Maxton Police Dep't,* No. 7:26-CV-00014-FL (E.D.N.C. Jan. 29, 2026).

[2] Reaves's email access was restored on March 1, 2022. *See Reaves* v. *Pub. Schs. of Robeson Cnty*, No. 7:22-CV-00039-FL (E.D.N.C. Mar. 11, 2022), Compl. ¶ 11, D.E. 1-1. She was subsequently suspended for 90 days. Id. ¶ 55.

*Id.* Although it seeks no specific monetary damages, the Complaint requests compensatory and punitive damages as well as injunctive and declaratory relief by restoring her email access and correcting her employment records. *Id.* at 16–18.

## II.     IFP Motions

Reaves asks the court to allow her to proceed against the Defendants without paying the required filing fee or other costs normally associated with a civil lawsuit (otherwise known as proceeding "in forma pauperis" or "IFP"). The court may grant her request if she submits an affidavit describing her assets and the court finds that she cannot pay the filing fee. 28 U.S.C. § 1915. In assessing a request to proceed IFP, the court should consider whether the plaintiff can pay the costs associated with litigation "and still be able to provide himself and his dependents with the necessities of life." *Adkins* v. *E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted).

The court has reviewed Reaves's applications and finds that she lacks the resources to pay the costs associated with this litigation. The court thus grants Reaves's motions (D.E. 10, 14) and allows her to proceed IFP.

## III.    Screening Under 28 U.S.C. § 1915

Along with determining whether Reaves is entitled to IFP status, the court must also analyze the viability of the claims contained in the complaint. 28 U.S.C. § 1915(e). The court reviews a complaint to eliminate claims that unnecessarily impede judicial efficiency and the administration of justice. The court must dismiss any portion of the complaint it determines is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B).

3

The court may dismiss a complaint as frivolous because of either legal or factual shortcomings. *Neitzke* v. *Williams*, 490 U.S. 319, 325 (1989). "Legally frivolous claims are based on an 'indisputably meritless legal theory' and include 'claims of infringement of a legal interest which clearly does not exist.'" *Adams* v. *Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton* v. *Hernandez*, 504 U.S. 25, 32–33 (1992).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Reaves's pro se status relaxes, but does not eliminate, the requirement that her complaint contain facially plausible claims. The court must liberally construe a pro se plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

## A.  Section 1983 Claims

Section 1983 creates civil liability for any person acting under the color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Philips* v. *Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

4

### 1.    Unlawful Policies

Reaves asserts that the Public Schools of Robeson County (PSRC) and its School Board violated her constitutional rights by failing to respond to her grievances. She asserts that that the Board "ratified adverse actions and baseless allegations while ignoring the grievance(s)[.]" Compl. ¶ 57(d). And Reaves argues that the failure to address her grievances constitutes an official policy or custom because there was a lack of adequate training and supervision. *Id.* ¶¶ 57(b), (c).

This cause of action is subject to dismissal on several grounds. First, the limitations period has run. Section 1983 does not contain a statute of limitations. *Owens* v. *Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Instead, courts borrow the statute of limitations from the most analogous state-law cause of action which, for § 1983 suits, is a personal-injury suit. *Id.*; *see* 42 U.S.C. § 1988(a); *Owens* v. *Okure*, 488 U.S. 235, 249–50 (1989). While § 1983 borrows the limitations period from state law, "accrual of a federal action is a question of federal law[]" and "a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Perry* v. *Pamlico Cnty.*, 88 F. Supp. 3d 518, 529–30 (E.D.N.C. 2015) (internal citations omitted).

In North Carolina, the statute of limitations for personal injury actions is three years. N.C. Gen. Stat. § 1–52(5). Reaves knew of the facts underlying this claim since late in 2021. In fact, she filed several lawsuits about the grievances and IT issues she now alleges resulted from the Defendants' policies. *See Reaves* v. *Williamson,* No. 7:22-CV-00002-FL (E.D.N.C. Jan. 3, 2022); *Reaves* v. *Pub. Schs. of Robeson Cnty.,* No. 7:22-CV-00039-FL (E.D.N.C. Mar. 11, 2022); *Reaves* v. *Faulkner,* No. 7:22-CV-00040-FL (E.D.N.C. Mar. 11, 2022). The three-year limitations period expired in 2024. This claim, raised over a year later, appears untimely and thus subject to dismissal.

Second, the school district is not a proper defendant. The Fourth Circuit has explained that "a governmental entity may only be sued if the law of the state in which the court is located permits

5

it." *Smith* v. *Munday*, 848 F.3d 248, 256 (4th Cir. 2017) (citing cases); Fed. R. Civ. P. 17(b)(3). Under North Carolina law, no statute permits a suit against a local school system. Instead, suits against local education agencies must be brought against the local board of education. *See I.M.* v. *Granville Cnty. Sch.,* No. 5:22-CV-7-FL, 2022 WL 3441835, at *5 (E.D.N.C. Aug. 16, 2022)). It is that body which is "capable . . . of prosecuting and defending suits for or against the corporation." N.C. Gen. Stat. § 115C-40. Since Reaves attempts to sue an entity which lacks the capacity to be sued, her claim against PSRC is subject to dismissal. *See Sawyer* v. *Elizabeth City Pasquotank Pub. Sch. Sys.*, No. 2:23-CV-00026-M, 2023 WL 9065957, at *4 (E.D.N.C. Dec. 6, 2023), *adopted by* 2024 WL 41625 (E.D.N.C. Jan. 3, 2024).

Third, the Complaint fails to state a claim. The School Board is considered a municipality subject to liability under § 1983. *See e.g.*, *Riddick* v. *Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522–23 (4th Cir. 2000) (analyzing the liability of a school board as a municipality for the purposes of § 1983). To hold a governmental entity liable for constitutional violations under § 1983, a complaint must contain sufficient allegations to show that the alleged constitutional injury is attributable to an official policy, procedure, or custom of the county. *See Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may meet this burden by showing that the unconstitutional custom flows from an express policy, the decisions of a policymaking official, a failure to train officers that "manifest[s] deliberate indifference to the rights of citizens[,]" or through a practice so widespread as to become a "custom or usage with the force of law." *Lytle* v. *Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter* v. *Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Yet the Complaint's mere reference to a policy or custom is insufficient to state a claim. It identifies no policy, practice, or custom of the school district or school board on grievances or

6

email communications to trigger *Monell* liability. Whether they establish constitutional violations, Reaves has not alleged there is an official policy or custom to deny email access or fail to address a grievance. And efforts to create a policy or custom from her isolated experience are inadequate to state a *Monell* claim. *See Spell* v. *McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) (observing that "proof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training," or a "custom of comparable practices."); *Boyd* v. *Mun. Robersonville*, No. 4:24-CV-59-FL, 2024 WL 4982828, at \*4 (E.D.N.C. Dec. 4, 2024) (finding no "persistent and widespread practice" or "continued inaction in the face of documented widespread abuses," and concluding that a single constitutional violation alleged was inadequate to state a *Monell* claim) (internal citations omitted), *recons. denied*, 2025 WL 3471708 (E.D.N.C. Apr. 16), *aff'd*, No. 25–1537, 2025 WL 3451539 (4th Cir. Dec. 1, 2025), and 2025 WL 3451539 (4th Cir. Dec. 1, 2025).

For these reasons, the court should dismiss this claim of Reaves's Complaint.

### 2. Retaliation

Reaves also claims that Williamson retaliated against her for her grievances by disabling her state email and IT access, impairing her ability to perform her work. Compl. ¶ 50. She maintains that their actions violated the First Amendment and § 1983.[3] And Reaves contends that the Defendants' actions in failing to act on her grievance and restricting her IT access would chill an ordinary person from exercising their First Amendment rights. *Id.* ¶¶ 49, 51.

In the context of public employment, a First Amendment retaliation claim requires a plaintiff to plausibly allege three elements. First, the speech must involve a matter of public

---

[3] Reaves filed a similar claim asserting that Defendants retaliated against her for filing a grievance in violation of North Carolina's Retaliatory Employment Discrimination Act (REDA). The court adopted a recommendation to dismiss that cause of action for failing to exhaust administrative remedies. *See Reaves* v. *Faulkner, et al.*, No. 7:22-CV-00040-FL (E.D.N.C. Mar. 23, 2023).

concern. *Watson* v. *Wake Cnty. Pub. Sch. Sys.*, 797 F. Supp. 3d 591, 610 (E.D.N.C. 2025). Second, the interest of the employee "in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public." *Id.* And third, the expression "was a substantial factor" in the adverse employment action. *Massaro* v. *Fairfax Cnty.*, 95 F.4th 895, 905 (4th Cir. 2024) (citing *McVey* v. *Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

On the first factor, a matter of public concern involves an issue of social, political, or other interest to the community. *See James* v. *City of Monroe*, No. 3:22-CV-00178-RJC-DSC, 2022 WL 3268744, at *6 (W.D.N.C. Aug. 10, 2022) (citing *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 269 (1964); *Love-Lane* v. *Martin*, 355 F.3d 766, 776 (4th Cir. 2004)). Wrongdoing by government officials can constitute speech that raises issues of public concern. *See Kirby* v. *City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004).

Upon satisfying the first prong, the burden shifts to the government to show that the speech substantially interfered with official responsibilities. *Connick* v. *Myers,* 461 U.S. 138, 150 (1983). To meet the third element, a plaintiff must show a causal connection between the speech and adverse action. *Id.* (citations omitted). Temporal proximity may create the inference of causation. *Porter* v. *Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 582–83 (4th Cir. 2023) (citation omitted).

Without deciding whether the Complaint sufficiently states a First Amendment retaliation claim, it is untimely.[4] Reaves filed her grievances in December 2021. And her IT access was restored three months later. Given the applicable three-year statute of limitations, the statute of limitations expired no later than March 2025, well before Reaves filed this action.

---

[4] For purposes of this Order & Memorandum & Recommendation, the undersigned assumes, without deciding, that Reaves may be able to meet the first factor given that the Complaint contends that she filed a grievance alleging Williamson backdated an employment contract, which could arguably state a matter of public concern. And her grievances occurred within a few days of the suspension of her IT access, so the temporal proximity could suggest a causality. The second factor, on which the Defendants would bear the burden, could not be ruled out for purposes of review under § 1915(e).

For these reasons, the district court should dismiss this claim.

### 3. Accessing Records

Reaves next maintains that the School Board's attorney Daniel Smith, and his firm, Brooks Pierce, wrongfully accessed her employment and personnel records and disseminated their contents. According to the Complaint, this action constituted a "seizure" under the Fourth Amendment. Compl. at 9–10.

As with other claims, Reaves knew of the facts underlying this claim since late in 2021. She filed another action challenging the fact that Smith and Brooks Pierce accessed her employment records, which the court dismissed. *See Reaves* v. *Brooks Pierce, et al.*, No. 7:22-CV-00053-FL (E.D.N.C. June 30, 2022). The claim is also untimely because Reaves raised it well-after the three-year limitations period expired.[5]

Based on these reasons, the district court should dismiss this cause of action.

### 4. Procedural Due Process

Reaves also asserts that the Defendants infringed on her procedural due process rights by falsely accusing her of violating the electronic communications policies and failing to address her grievances.

The Fourteenth Amendment's Due Process Clause provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1. To state a procedural due process claim, a plaintiff must allege three things. *Kendall* v. *Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011). First, she has a cognizable liberty or property interest. *Id.* Second, she was intentionally deprived of that interest by some state action. *Id.* And

---

[5] For school employees, North Carolina law provides "[a]ll information contained in a personnel file, except as otherwise provided in this Chapter, is confidential and shall not be open for inspection and examination except to any of the following persons . . . [m]embers of the local board of education and the board's attorney." N.C. Gen. Stat. § 115C-321(a)(3). So it appears that the School Board was permitted to share Reaves's records with Smith and his firm.

third, the procedures employed were constitutionally inadequate. *Id.* At a minimum, procedural due process typically requires notice and an opportunity to be heard. *Id.* at 528–29.

The Complaint has not plausibly alleged that suspending her state IT privileges deprived Reaves of any liberty or property interest. And assuming she has a property interest in her employment, Reaves fails to plausibly allege that her inability to access the IT platform constituted a procedural due process violation.

As with other causes of action, this claim accrued in 2021 and the statute of limitations has run. And the court dismissed Reaves's other lawsuits that challenged the Defendants over her grievances and suspended IT access. *See Reaves* v. *Williamson,* No. 7:22-CV-00002-FL (E.D.N.C. No. 22, 2022); *Reaves* v. *Pub. Schs. of Robeson Cnty.,* No. 7:22-CV-00039-FL (E.D.N.C. Jan. 26, 2023); *Reaves* v. *Faulkner,* No. 7:22-CV-00040-FL (E.D.N.C. Mar. 23. 2023) (equal protection). So her due process claim should be dismissed.

### B. Fair Credit Reporting Act

The Complaint claims that the Defendants violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, when Smith was allowed to access her personal information while she was employed by PSRC. Compl. ¶ 58. She maintains her employment information was furnished to an unidentified third-party, as recently as December 2025. *Id.* ¶¶ 61, 66. And Reaves asserts that these actions have interfered with her prospective employment opportunities. *Id.* ¶ 64.

To achieve its purpose of ensuring "fair and accurate credit reporting," the FCRA creates requirements about credit information. *See id.* The FCRA imposes certain duties and procedures on various entities including credit reporting agencies, furnishers of credit information to credit reporting agencies, and users of consumer reports.[6] *Id.* "Consumer reporting agencies and

---

[6] A "consumer report" includes any communication by a consumer reporting agency that bears on an individual's character or reputation that may be used for certain purposes, including employment. 15 U.S.C. § 1681a(d)(1)(B). The

furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee." *Roberts* v. *Carter-Young, Inc.*, 131 F.4th 241, 245 (4th Cir. 2025) (quoting *Denan* v. *Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020)).

Furnishers must ensure that the information they provide to consumer reporting agencies is accurate. *See* 15 U.S.C. § 1681s-2(a). When a consumer believes their credit report contains inaccurate or incomplete information, they can raise a direct dispute with the furnisher or an indirect challenge by notifying a consumer reporting agency. *See id.* §§ 1681i(a)(2), 1681s-2(a)(8), (b). A consumer may sue a furnisher for willfully or negligently failing to reasonably investigate a dispute over the accuracy or completeness of information in her credit report. *Roberts*, 131 F.4th at 246.

This claim fails for two reasons. First, Reaves alleges that Defendants were "'furnishers of information' under the FCRA and knowingly furnished employment information" entitling her to relief under §§ 1681n and 1681o. Compl. ¶ 68. Those provisions create private rights of action for those who violate the FCRA's provisions. *See* 15 U.S.C. § 1681n (right of action against willful violators); § 1681o (right of action against negligent violators). But such actions are limited to claims against consumer reporting agencies. *Id.* The FCRA creates no private right of action for violating provisions that require furnishers to provide accurate information. *Id.* § 1681s-2(c); *see Weber* v. *Specialized Loan Servicing, LLC*, 627 F. Supp. 3d 538, 545 (E.D.N.C. 2022).

---

defined term excludes a "report containing information solely as to transactions or experiences between the consumer and the person making the report[.]" *Id*. §1681a(d)(2)(A)(i). The statute also states that a "consumer reporting agency" is one "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." *Id*. § 1681a(f).

Second, there is no evidence that the Defendants provided information to a consumer reporting agency. Beyond the School Board's attorney and his firm, the Complaint fails to identify to whom Reaves maintains her personnel records were allegedly disclosed.

For these reasons, the court should dismiss Reaves's FCRA claim.[7]

### C.      Intentional Infliction of Emotional Distress

Reaves's Complaint also alleges a cause of action under North Carolina law for intentional infliction of emotional distress (IIED). Compl. at 14–16. To state an IIED claim, plaintiffs must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens* v. *Puryear*, 302 N.C. 437, 276 S.E.2d 325, 335 (1981). Liability for IIED arises only when a defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs* v. *Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308, 311 (1985) (quotation omitted). "The determination of whether the conduct alleged was intentional and was extreme and outrageous enough to support such an action is a question of law[.]" *Lenins* v. *K-Mart Corp.,* 98 N.C. App. 590, 391 S.E.2d 843, 848 (1990).

As with other causes of action, this claim is untimely. As noted above, North Carolina tort claims have a three-year limitations period. N.C. Gen. Stat. § 1–52(16). This cause of action accrued over three years before Reaves filed the present action. S*ee Spencer* v. *Town of Chapel Hill*, 290 F. Supp. 2d 655, 661 (M.D.N.C. 2003) (observing that suffering of emotional distress "is the triggering event for statute of limitations purposes.") (citing *Soderlund* v. *Kuch*, 546 S.E.2d 632, 637 (N.C. Ct. App. 2001)). And the Complaint asserts no continuing violation by the Defendants. So Reaves's claim for intentional infliction of emotional distress is time-barred.

---

[7] A two-year statute of limitations applies to FCRA claims. Because the Complaint contends that the Defendants furnished Reaves's employment information as recently as 2025, the claim would not be time-barred.

And the court dismissed Reaves's other lawsuits that raised similar claims for intentional infliction of emotional distress. *See Reaves* v. *Faulkner,* No. 7:22-CV-00040-FL (E.D.N.C. Mar 23, 2023); *Reaves* v. *Brooks Pierce,* No. 7:22-CV-00053-FL (E.D.N.C. June 30, 2022); *Reaves* v. *Maxton Police Dep't,* No. 7:22-CV-00204-FL (E.D.N.C. Apr. 12, 2023). So her IIED claim is subject to dismissal.

This claim should also be dismissed for failure to state a claim. Reaves alleges no conduct on the part of any Defendant that could be regarded as so extreme and outrageous to support an IIED action. The Complaint asserts that Reaves received threatening directives and emails, was unable to perform her job because her IT access was disabled, and faced baseless accusations of policy violations. It further claims that the Defendants failed to address her grievance, accessed and disseminated information in her personnel file, and ignored her medical condition.[8] Her claims are not only conclusory but fall well short of alleging the magnitude of conduct that forms a basis of an IIED claim. *See, e.g., Pardasani* v. *Rack Room Shoes, Inc.*, 912 F. Supp. 187, 192 (M.D.N.C. 1996) (observing that most adverse employment actions, save for certain types of sexual harassment, do not qualify as extreme and outrageous). So they do not meet the pleading standard.

The undersigned recommends dismissing all the claims that establish this court's original jurisdiction. Alternatively, should the District Court adopt the recommendations to dismiss all of Reaves's federal claims, it should decline to exercise supplemental jurisdiction over her state-law claim for intentional infliction of emotional distress considering the interests of judicial economy, fairness, federalism, and comity.

---

[8] The Complaint claims Reaves sought a virtual meeting because of COVID-19 and became ill and sought care from her cardiologist because of Williamson's threatening emails. Compl. ¶¶ 17, 27. No other details of a medical condition are alleged. Nor does the Complaint suggest the Defendants had any knowledge of any medical condition.

Thus, Reaves's intentional infliction of emotional distress claim should be dismissed without prejudice.

## IV.     Other Motions

### A.     Motion to Seal

Reaves has requested the court seal her IFP application. Mot., D.E 11. The submission set out her monthly expenditures as well as the amount of income she made in past jobs. D.E. 10. Reaves claims that the information could be embarrassing and implicate privacy concerns. Mot. at 1. And she alleges that courts routinely seal financial information contained in an IFP application to safeguard the sensitive information. D.E. 11–1.

The court disagrees. As this court has recognized, the public's right to inspect and copy judicial records and documents "may be abrogated only in unusual circumstances." *Stone* v. *Univ. of Md.*, 855 F.2d 178, 182 (4th Cir. 1988). This tenet "promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe* v. *Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (citing *Columbus-Am. Discovery Grp.* v. *Atl. Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000)).

The right of access court filings arises from either the common law or the First Amendment. *Va. Dep't of State Police* v. *Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Because Reaves's motion appears to implicate the common law right of access, she must show that "countervailing interests heavily outweigh the public interests in access[]" to overcome the presumption of access. *Rushford* v. *New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

Although they include basic personal financial information, applications to proceed without prepayment of costs are generally matters of public record. *Feehan* v. *Grand Canyon Univ.*, No. 7:23-CV-287-FL, 2023 WL 4554101, at *1 (E.D.N.C. June 27, 2023). And sealing every IFP application would deny the public "important transparency in the working of the

judiciary," deprive opposing parties "the opportunity to raise objections," and limit the court's ability to "check on potential misstatements or omissions in IFP affidavits." *Id.* (quoting *SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 127–28 (D.D.C. 2015).

The grounds Reaves relies on in her motion to seal are not unique to those who seek to proceed in forma pauperis. Instead of establishing a particularized need, she cites the general interests in keeping such matters private. Her conclusory arguments fail to overcome the presumption of public access. So the court will deny the motion to seal (D.E. 11).

### B.      Motion for an Extension of Time

Reaves also asks for additional time to satisfy the deficiencies in her pleadings. Mot., D.E. 12. In February, the court noted that Reaves's IFP application was incomplete, she had filed no notice of self-representation or financial disclosure, and she had failed to submit proposed summonses. Order, D.E. 8. So it directed her to correct those matters. *Id.*

Reaves submitted new applications to proceed IFP (D.E. 10, 14), along with a financial disclosure statement (D.E. 9). But the docket reflects no notice of self-representation or proposed summonses have been filed.

Because the undersigned recommends that the district court dismiss the complaint, the request for additional time is moot and thus denied.

### C.      Motion to Suppress

Reaves has also moved the court to suppress the Defendants' use of evidence she claims was unlawfully seized. Mot., D.E. 4. Reaves maintains that the Defendants unlawfully accessed her personnel records, state email account, and digital employment information and disseminated them to other Defendants. Doing so, Reaves claims, implicated protections afforded to her under

the Fourth Amendment and FCRA. And no good-faith workplace exceptions applies under these circumstances.

There are several reasons to deny her request. First, Reaves puts forth no evidence to establish the premise of her motion—that the Defendants wrongfully obtained information in her records.

Second, Reaves does not identify the specific documents or information she seeks to limit. Nor is there any indication at this juncture what context the Defendants may use that evidence. So a blanket exclusion of personnel records, emails, or employment information is not warranted.

Third, to the extent the motion seeks a preliminary ruling on the admissibility of evidence outside of an evidentiary motion or trial, it is premature. To the extent they are needed, evidentiary determinations will be made at the appropriate stages of litigation.

And fourth, Reaves's Complaint claims that the Defendants' actions were retaliatory and violated legitimate employment policies and governing law. Arguably, then, some of the documents she seeks to limit use of like her employment and personnel records and work email account could contain information relevant to this case. *See Cason* v. *Builders FirstSource-Southeast Grp., Inc.*, 159 F. Supp. 2d 242, 247 (W.D.N.C. 2001) "[W]here the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses . . . personnel files are subject to discovery."); *Howard* v. *Coll. of the Albemarle,* No. 2:15-CV-00039-D, 2016 WL 4384658, at *3 (E.D.N.C. Aug. 16, 2016) (finding that personnel records were relevant when employee alleged employment discrimination and wrongful termination).[9] To the extent any of the documents Reaves references contain

---

[9] And an argument may be made that Reaves has waived any interest in the confidentiality of her own employment records that are relevant to her claims by filing the action, thereby placing such information in issue. *See Koch* v. *Cox*, 489 F.3d 384, 389–90 (D.C. Cir. 2007) (observing that evidentiary privileges otherwise enjoyed by a plaintiff are waived when the plaintiff files a suit that necessarily depends on disclosure of the privileged information).

sensitive and confidential information, for which privacy concerns attach, the parties would be able to seek an appropriate confidentiality order. *See Reeves* v. *Wayne Cnty. Bd. of Educ.*, No. 3:20-CV-00423, 2020 WL 6688863, at *2 (S.D.W. Va. Nov. 12, 2020).

In sum, there is no merit to the motion to suppress. So the court will deny it.

## V. Conclusion

For the reasons above, the court grants Reaves's motions to proceed IFP (D.E. 10, 14). It denies her motions to seal (D.E. 11) and suppress (D.E. 4). And it denies her motion for additional time (D.E. 12) as moot. The undersigned also recommends that the court dismiss Reaves's Complaint without prejudice.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: May 8, 2026

_Robert T Numbers II_
_____
Robert T. Numbers, II
United States Magistrate Judge